IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 13 CR 103 |
| | ) | Judge Robert W. Gettleman |
| CORNELIUS PAXTON, RANDY WALKER, | ) | |
| RANDY PAXTON, ADONIS BERRY, and | ) | |
| MATTHEW WEBSTER, | ) | |

## MEMORANDUM OPINION AND ORDER

On July 31, 2014, this court issued a memorandum opinion and order (Doc. 153) granting in part and denying in part defendants' motion to suppress post-arrest statements that were recorded in a Chicago Police Department transport van. The court held that there was a reasonable expectation of privacy in the rear compartment of the van defendants were transported in following their arrest, and suppressed statements made prior to the time that defendant Adonis Berry stated that he thought the van was "probably bugged." That statement appears at p. 8, line 6 of the draft transcript of the audio recording made on January 30, 2013, and at 19 minutes, 30 seconds into the enhanced version of the audio tape provided by the government. The court held that statements made after Mr. Berry articulated his suspicion that the van was bugged and that "there's cameras in here too," were not protected by a reasonable expectation of privacy because defendants were put on notice that they were potentially, if not surely, under surveillance, thereby extinguishing their expectation of privacy.

On August 27, 2014, defendant Webster filed a motion to reconsider the partial denial of the motion to suppress concerning statements made after Mr. Berry's observation (Doc. 156). Thereafter, the other defendants joined Mr. Webster's motion. The court took briefing on the motion to reconsider and conducted extensive evidentiary hearings. Because some of the facts

were vigorously contested by the parties, the court ordered the government to produce for inspection the actual van used during the arrest of the defendants. On January 28, 2015, the Chicago Police Department brought a Chevrolet van into the basement of the Dirksen Courthouse for inspection by the court, counsel, and defendants. Some of the defendants claimed that that van was different from the one in which they had been transported and recorded on the date of their arrest. The court noted that the van in the photographs that had been submitted in connection with the motion to suppress and to reconsider (Gov. Exs. Photo 1- Photo 14) was a Ford E350 van, not a Chevrolet van like the one that had been brought to the courthouse for inspection.

Through the efforts of the United States Attorney's Office, the Ford E350 van depicted in the photographs was brought to the basement of the Dirksen Courthouse on January 30, 2015, for inspection by the court, counsel, and defendants. Under oath, the Chicago Police Officer who was present during defendants' arrest testified that this van was either the van used that day or one identical to it. It was also represented to the court that there are only two types of vans (other than the traditional squadrols) that are used by the Chicago Police Department: Chevrolet vans like the one produced on January 28; and Ford E350 vans like the one produced on January 30. The officer also testified that a squadrol was not used or present on the date of the arrest, January 30, 2013.

Based on the testimony and evidence produced at the evidentiary hearing and on the court's inspection of the van produced on January 30, 2015 (which appeared to be identical in dimensions to the Chevrolet van produced on January 28, 2015), as articulated in open court, the court makes the following findings:

1. The court reaffirms its conclusion that defendants who were placed in the rear compartment of the van had a reasonable expectation of privacy for the reasons articulated in the court's July 31, 2014, memorandum opinion and order. In fact, the inspection of the actual van reenforces that conclusion. There are two partitions between the rear compartment and the driver's compartment: one between the rear compartment and the mid-compartment, and another between the mid-compartment and the driver's compartment. The partitions between the compartments are solid steel with small double plexiglass windows in each compartment. There is no visible recording or other equipment in the rear compartment, and it is very difficult to be heard outside the compartment when the doors are closed. Certainly, after the doors were closed (as was the case during the conversations at issue) anyone speaking in a whisper or low voice would not have any reason to believe that they were being overheard by anyone outside the rear compartment.

2. Mr. Berry's statement that the van was "probably bugged," and that "there's cameras in here too," was heard by all five defendants who were in the rear compartment of the van at the time. That compartment contains two benches facing each other, and when people are seated on either side of the benches they are shoulder to shoulder, knee to knee. The compartment is encased in metal, which carries sound throughout the compartment. The noise from the van's diesel engine, which the court had turned on during its inspection, is not lough enough to significantly obstruct the hearing of those in the rear compartment of the van.

An additional review of the video and audio recordings by the court convinces the court that Mr. Berry's statement was heard, and for the reasons stated in the July 31, 2014, memorandum opinion and order, destroyed any expectation of privacy that existed prior thereto.

For these reasons, the court denies defendants' motion to reconsider. This matter is set for a status report on February 12, 2015, at 2:00 p.m.

**ENTER:** **February 3, 2015**

_____
**Robert W. Gettleman**
**United States District Judge**